## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

JAMES E. FULLER,                  )
    Plaintiff,              )
                              )
    v.                      ) Case No. 1:24-cv-1093-SEM-EIL
                              )
DR. WURSTER, et al.,              )
    Defendants.             )

### MERIT REVIEW ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff *pro se* James E. Fuller, who is imprisoned within the Illinois Department of Corrections ("IDOC"), has filed a Complaint (Doc. 1) under 42 U.S.C. § 1983 that is before the Court for screening. The Court holds that the Complaint states an Eighth Amendment deliberate indifference claim against Defendants Wurster and Nurse.

### I. COMPLAINT

#### A. Screening Standard

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be

granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## B. Facts Alleged

Plaintiff's suit identifies the following Defendants at Pontiac Correctional Center ("Pontiac"): Dr. Wurster and Dr. Howell; mental health providers Tessa Derby, Tisha Harty, and Carrie Hamilton; Major Brown; Lieutenant Doolin; and Warden Mindi Nurse. Plaintiff also names as a Defendant Dr. Melvin Hinton, IDOC's Chief Mental Health Director.

Plaintiff alleges that, in May 2023, Defendants removed him from his single cell status, in deliberate indifference to his serious mental health needs and in violation of a court order in Central District of Illinois Case Number 16-cv-1002.

Specifically, on May 26, 2023, non-party correctional staff informed Plaintiff that he was being moved and would be double-celled. Plaintiff showed them a court order that he alleges stated he is to be single-celled only. The non-party lieutenant stated that he informed Defendants Major Brown and Warden Nurse, who were aware of the order but that a double-cell had been approved by Defendant Dr. Wurster, as well as by Internal Affairs and Clinical Services.

Plaintiff then spoke with Defendants Major Brown and Lieutenant Doolin and showed them the relevant court order and an affidavit from Defendant Dr. Hinton stating that Plaintiff was to be single-celled.  Both Brown and Doolin told Plaintiff that, because a double-cell form had been approved, Plaintiff must either go to the newly-assigned cell or go to segregation.

Plaintiff asked to see a mental health crisis member. Defendant Derby arrived, Plaintiff showed her the court order and affidavit, and Derby went with Doolin to call Dr. Wurster.  Derby reported to Plaintiff that Dr. Wurster had approved the double-cell form.  Dr. Wurster was not Plaintiff's mental health provider.  Derby would not speak with Plaintiff further about the matter, and

Plaintiff went to the new cell at the direction of Defendants Brown and Doolin.

Upon entering the cell and seeing another inmate on the bottom bunk, even though Plaintiff had a bottom bunk permit, Plaintiff began to experience an anxiety/psychotic episode. A non-party lieutenant believed that Plaintiff might be suicidal or homicidal, so Plaintiff was taken to see Derby again, in her capacity as a crisis team member. After Derby conferred with a supervisor, Plaintiff was placed in a mental health/suicide watch cell.

Plaintiff alleges that the cell was extremely unsanitary, with evidence of feces, blood, and urine. Plaintiff was stripped naked and had only a suicide blanket and smock.

Plaintiff was seen by mental health providers each of the following days after his placement in the cell on May 26, 2023. On May 29, Plaintiff saw Defendant Harty, who said that Dr. Wurster had approved the double-celling and that Dr. Howell initially had not known anything about that approval. On May 30, Plaintiff saw Defendant Hamilton, who informed Plaintiff that she also had not known about Dr. Wurster's approval, that Dr. Wurster had not

consulted her, and that she would not have approved of double-celling Plaintiff.

After this fourth day in the mental health cell, Plaintiff was cleared by all mental health staff of suicidal or homicidal thoughts. Dr. Howell instructed Defendant Harty to draft a new recommendation for Plaintiff to be single-celled because Dr. Wurster would not rescind the double-cell form. However, Plaintiff had to remain in the crisis cell until Warden Nurse signed off on the new form reinstating Plaintiff's single-cell status. Plaintiff remained in the crisis cell until June 17, 2023, for a total of 22 days.

## C. Analysis

Based on the Court's review, the facts alleged in the Complaint are sufficient to state an Eighth Amendment claim for deliberate indifference to Plaintiff's serious mental health conditions against Defendants Wurster and Nurse. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (deliberate indifference claim requires objectively serious condition and sufficiently culpable state of mind; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) ("[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded that risk.").

This claim is not, however, based upon an alleged violation of an order in Plaintiff's earlier case, 16-cv-1002. Upon review of the docket, this Court takes judicial notice of the fact that the Court in 16-cv-1002 actually denied Plaintiff's request for a temporary restraining order (single-cell status) as moot. That Court apparently did not grant any single-celling order, on either a temporary or permanent basis.

Plaintiff does not state a claim for deliberate indifference against the remaining Defendants. "Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or lay persons." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

Non-medical staff, such as correctional officers, can rely on the expertise of medical personnel. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Therefore, Defendants Brown and Doolin were not deliberately indifferent to Plaintiff when they directed Plaintiff to his new double-cell assignment after double-celling had been approved by Dr. Wurster. *See, e.g., Knight v. Wiseman*, 590 F.3d 458, 465 (7th Cir.2009) (officers were entitled to rely on fact that

prisoner had no medical work restrictions on his record to conclude that he could work without injury)

Moreover, medical professionals are "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under [the] circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir.2008) (internal quotations omitted).  None of the allegations in Plaintiff's Complaint rise to the level of deliberate indifference by mental health providers Derby, Harty, or Hamilton.  Based upon the allegations, Derby took Plaintiff's complaints seriously and conferred with Dr. Wurster to ensure that Plaintiff had in fact been approved for double-celling. Derby also referred Plaintiff to suicide watch in a single cell after he exhibited signs of a mental health crisis.  Harty allegedly spoke to Plaintiff once, during which time she also confirmed that Dr. Wurster had approved him for double-celling. Finally, Hamilton told Plaintiff that she disagreed with Dr. Wurster's approval but that she had not been consulted on the matter.

In short, none of these three mental health providers are alleged to be doctors who could have overridden an order by Dr. Wurster.  "[O]fficials do not act with 'deliberate indifference' if they

are helpless to correct the protested conditions." *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997). Therefore, the allegations against Defendants Derby, Harty, and Hamilton cannot give rise to a deliberate indifference claim.

Finally, Plaintiff does not state any claim against Drs. Howell and Hinton. Supervisors and administrators are not liable based solely on their supervisory roles. *See Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). There are no allegations that Dr. Hinton, IDOC's Chief Mental Health Director, had any personal involvement in the decisions regarding Plaintiff's placement in a single or double cell in May 2023. As for Dr. Howell, the allegations in the Complaint suggest that Howell had no involvement in the initial double-cell approval by Dr. Wurster. Further, once Dr. Howell became aware of that approval, he issued a new recommendation for Plaintiff to be single-celled. Therefore, there is no plausible claim that Dr. Howell was deliberately indifferent to Plaintiff's serious mental health condition requiring single-celling.

As for the physical conditions in the crisis cell itself, Plaintiff has not alleged in his Complaint whether any Defendants were aware of the alleged feces, blood, or urine. Although he references involvement of certain Defendants in referring him to the cell or placing him on suicide watch, he does not allege who physically placed him in the cell and whether they noticed the conditions or Plaintiff brought those conditions to any Defendants' attention. *Cf. Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (Evidence that "the defendants visited [an inmate's] unit routinely, observed the conditions described in it, but failed to take adequate corrective measures" creates a triable issue of "the state of mind of the defendants."); *Isby v. Clark*, 100 F.3d 502, 505-06 (7th Cir. 1996) ("[I]f the conditions were truly as dreadful as [the plaintiff] claims [dried blood, feces, urine and food on the walls], the defendants, given their closeness to the situation, would in all probability have had the requisite state of mind to satisfy the subjective component of an Eighth Amendment claim.").

Without any identified Defendants who were alleged to have been subjectively aware of the conditions at issue, Plaintiff cannot proceed on a conditions of confinement claim.

## II. COUNSEL REQUEST

Also pending before the Court is a Motion to Request Counsel (Doc. 11) filed by Plaintiff.

### A. Standard

A *pro se* litigant has no right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). However, the federal statute authorizing *in forma pauperis* status provides a court "may request an attorney to represent any person unable to afford counsel." See 28 U.S.C. 1915(e)(1). A court does not have the authority to require an attorney to accept *pro bono* appointments in civil cases. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).

When confronted with a request for *pro bono* counsel under 28 U.S.C. §1915(e)(1), the district court is to make the following inquiries: (1) whether the indigent plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so; and if so, (2) given the difficulty of the case, whether the plaintiff appears to be competent to litigate it himself. *Pruitt*, 503 F.3d at 654-55.

The first inquiry is a mandatory threshold determination and requires the plaintiff attempt to obtain a lawyer independently.

*Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021).  This typically requires writing to several lawyers and attaching the responses received.

As for the second element, the district court must undertake "the individualized analysis that *Pruitt* requires[.]"  *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013).  Specifically, the court must consider "whether the difficulty of the case—factually and legally— exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself."  *Pruitt*, 503 F.3d at 655.  This inquiry must be a "practical one, made in light of whatever relevant evidence is available on the question."  *Id.*  The court should take account of all evidence in the record relevant to the plaintiff's ability to litigate.  *Navejar*, 728 F.3d at 696.  Such evidence may include any physical, intellectual, or psychological limitations the plaintiff may have and the practical problems the plaintiff may encounter in gathering evidence from individuals employed by an institution where he is no longer housed.  *Navejar*, 718 F.3d at 698.

Assistance in recruiting counsel is appropriate only where the plaintiff shows his case is one of those few in which it appears from

the record that the legal and factual difficulty exceeds his ability to prosecute. *Pruitt*, 503 F.3d at 654-55. This question is different from whether a lawyer might do a better job. *Id.*

## B. Analysis

In Plaintiff's Motion, he attests that he has written to three law firms to request representation in this matter but that he has not received any responses. The Court finds that Plaintiff has satisfied the first, threshold requirement.

Turning to the second element of the inquiry, Plaintiff refers back to his diagnosis with serious mental health conditions. He also explains that he suffers from a back condition and surgery that cause pain if he sits upright for extended periods of time. Plaintiff does not indicate his level of education but does raise concerns common to incarcerated plaintiffs, including inconsistent access to the law library during prison lockdowns.

The Court is sympathetic to the challenges presented by Plaintiff's mental and physical health conditions, as well as by his incarcerated status. However, Plaintiff's filings to date—in particular, his Complaint—are clear, well-organized, and relatively concise. Further, the Court has narrowed the claims and

Defendants in the instant Order, such that Plaintiff's case is proceeding on a claim of deliberate indifference that is not overly complex. The Court will also issue a Scheduling Order that will further explain important deadlines, discovery, and the Court's procedures.

In short, this case does not appear to be beyond Plaintiff's ability to litigate at this stage.

Recruiting *pro bono* counsel in this district is difficult, as the need far exceeds the supply. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("District courts are thus inevitably in the business of rationing a limited supply of free lawyer time."). Although "[a]lmost everyone would benefit from having a lawyer, [] there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (internal quotation omitted); *Mejia v. Pfister*, 2021 WL 647085, * 4 (7th Cir. Feb. 19, 2021) ("[F]or its part, the district court found itself having to [choose] how best to allocate scarce resources, for it remains the sad reality that there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.") (internal quotation omitted).

For these reasons, Plaintiff's Motion is denied, with leave to refile should his circumstances change at a later stage of litigation.

## III. PRELIMINARY INJUNCTION

Finally, Plaintiff has also filed a Motion for Preliminary Injunction (Doc. 13).

### A. Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm International v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); see also *Westefer*, 682 F.3d at 683 (PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

## B. Facts Alleged

Plaintiff alleges that, after filing the instant Complaint, he was transferred from Pontiac to Lawrence Correctional Center, where there is only one mental health provider who does not have sufficient time to provide him with adequate mental health treatment. Plaintiff is under the care of a nurse practitioner who has increased his medications, due to reports by Plaintiff of increased auditory hallucinations.

Plaintiff requests an order directing Lawrence Warden
Jeremiah Brown or IDOC Chief Mental Health Director Dr. Melvin
Hinton to transfer Plaintiff from Lawrence to an IDOC facility where
he can receive adequate treatment for his serious mental health
condition.

### C. Analysis

The purpose of a temporary restraining order or preliminary
injunction is to preserve the status quo pending a final hearing on
the merits of the case. *American Hospital Association v. Harris*, 625
F.2d 1328, 1330 (7th Cir. 1980).  Plaintiff's request for a transfer is
different.  The Seventh Circuit has described the type of injunction
Plaintiff seeks, where an injunction would require an affirmative act
by a defendant, as a mandatory preliminary injunction.  *Graham v.
Medical Mutual of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

Mandatory injunctions are "cautiously viewed and sparingly
issued," because they require the court to command a defendant to
take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772,
774 (7th Cir. 1978)); see also *W.A. Mack v. General Motors Corp.*,
260 F.2d 886, 890 (7th Cir. 1958) (mandatory injunctions very
rarely issue, except on the clearest equitable grounds).

Plaintiff's Motion makes clear that he is receiving care by one or more medical providers who are authorized to prescribe his necessary psychotropic medications.  Even if this were one of the very rare cases in which a mandatory injunction might issue, it is unclear what action either of the remaining Defendants could take to effectuate Plaintiff's transfer from Lawrence, given that the two Defendants both have positions of authority only at Pontiac. Warden Brown and Dr. Hinton are not currently parties to this suit.

Plaintiff's request for injunctive relief must therefore be denied at this time.

**IT IS THEREFORE ORDERED:**

1) **According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment deliberate indifference claim against Defendants Wurster and Nurse. Defendants Derby, Hinton, Howell, Harty, Hamilton, Brown, and Doolin are DISMISSED. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **Plaintiff's Motion to Request Counsel [11] is DENIED, without prejudice.**

3) **Plaintiff's Motion for Preliminary Injunction [13] is DENIED, without prejudice.**

4) **Plaintiff's Motions for Status [12], [14] are MOOT.**

5) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

6) **The Court will attempt service on Defendants by mailing waivers of service. Defendants have sixty days from service to file their Answers. If a Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

7) **Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

8) **Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth a Defendant's positions. The Court does not rule on the merits of those positions unless and until a Defendant files a motion. Therefore, no response to an Answer is necessary or will be considered.**

9) **This District uses electronic filing, which means that, after Defendants' counsel have filed an appearance,**

counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

11) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

12) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

13) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

**14)  The Court directs the Clerk to attempt service on
Defendants under the standard procedures.**

ENTERED April 16, 2025.


s/ *Sue E. Myerscough*

_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE